May it please the Court. Again, I'm Robert Jobe, and I'm appearing on behalf of the petitioner, Mani Palsing. Now, I think any discussion of this case has to begin with the government's concession in its brief to the Court, which is set forth initially on page 15 of its brief in footnote 4, but again on page 24 of its brief in footnote 5, where the government concedes that neither the immigration judge nor the Board of Immigration Appeals made any explicit adverse credibility finding in this case. As a result of that concession, the Court, as a matter of law, has to accept everything that Mr. Singh testified to as true. The law on that is clear and consistent. And that just simply then allows the Court to turn to the remaining questions, which in its brief to the Court, the government characterized as being, does the evidence compel the conclusion that Mr. Singh suffered past persecution or has a well-founded fear? Now, I'd like to focus on the well-founded fear question because it seems to me like that's the easier question here. The only analysis from the agency on this point is at page 66 of the administrative record, where the immigration judge suggested that there is no reason to believe in this case that this particular individual is still wanted by the Indian authorities and that, as a result, she says there's no objective basis for his belief that he would be persecuted if he's returned. Now, if we're accepting his testimony as true, that analysis must simply be rejected because Mr. Singh testified before the immigration judge. And, again, the government concedes that we have to accept this testimony as true. On page 118, he was asked about, you know, whether he had been communicating with his mother back home. And he says, yes, my mother tells me that the police are continuing to come looking for me. And then on page 193, there's an affidavit from his neighbors where they describe that the police are still no, it's an affidavit from his family, excuse me, where they say the police raided our home in 2001 and 2002. And then in the final paragraph of that affidavit, they say, and the police is still inquiring from our neighbors about Amarinder Singh and Manipal Singh. Now, the immigration judge's entire analysis with regard to well-founded fear is simply that at this point, we don't have any reason to believe that the police retain an interest in this particular person. But accepting Mr. Singh's testimony as true, which we must in view of the government's concession that there's no adverse credibility finding in this case, we must accept as true that, in point of fact, the police are continuing to look for this individual. Is that really true? He's not testifying to that. He's relating other people have told him that. Of course. But I'm not sure that we're bound to accept as true everything that he reports that somebody else told him. You're true, but I think, Your Honor, there would have to be some basis to challenge. There is some question as to, and let me go ahead and cut to the quick summit. As you know, the government filed a motion to remand, which under the timing, we decided that we would not grant. But it does suggest that the department understands that there are difficulties in defending. Right. So could you speak specifically to what you think should happen from here, if, in fact, we would decide to grant the petition for review on what terms or then what? Right. I mean, the way the government phrased it and it framed it in its brief is that the issues before the court would be simply, does the evidence compel a conclusion that this individual suffered past persecution? Does the evidence compel the conclusion that he has a well-founded fear? If you're going to address both of those points, and the government asked you to address both of those points in its response brief to this court, you're going to have to rule in our favor on that because, obviously, this is a man who was arrested and tortured on three separate occasions. On that last occasion, he was suspended upside down and pummeled, while suspended upside down, for and accused of attempting to author an article accusing the police of human rights abuses. That's a classic case of persecution on account of political opinion. The past persecution question is easily resolved. I'd be happy if we stopped at that point and sent it back for the board to resolve the question of whether the government can rebut the regulatory presumption that would arise upon a showing of past persecution, that this individual then faces future harm. But the government has framed the issue in its brief in those terms. That issue seems to be before the court, and it's an issue that could be easily resolved in our favor. So that's what I would ask the court to do. I understand the government's predicament, believe me. You know, we were talking before our argument here. They've basically given away the case by making that concession. But the way they frame the remaining issues in their brief is to say that the issue of past persecution and well-founded fear are before the court. And if those issues are before the court, at least the issue with regard to past persecution, it's a very straightforward, simple one because this case presents a classic instance of persecution on account of political opinion. So what's left? The only remaining issue before the court, Your Honor, there's an issue of waiver. You know, I can say that the issue of cat relief I don't think was adequately raised at the Board of Immigration Appeals. With respect to withholding or removal, I don't think that that was waived because at the Board of Immigration Appeals, the issue of past persecution was clearly raised. And if Mr. Singh demonstrates past persecution, then there's a presumption that would arise that he's also entitled to withholding of removal. And, again, that's an issue that could be addressed by the board on remand. But I do think the court is in a position to address the issue of past persecution, and the government invited it to do so in its response brief to the court. So we'll now hear from the Attorney General. Good morning, Your Honors. My name is Beau Stanton. I'm here today on behalf of the Attorney General. As the court recognizes, the government did file a motion to remand. It was denied by this court. The government respectfully renews the motion to remand this case. The reason for this remand is because the government believes as the administrative decisions stand right now, the court cannot conduct meaningful judicial review of these decisions. As noted in our brief, we accept the fact that the immigration judge's determination regarding petitioner's credibility does not appear sufficient to constitute an adverse credibility determination under this Court's precedence. However, we did not concede this point, nor did we accept the fact that the petitioner is credible. If you look on our brief, on our footnote number 4, we essentially preserve this issue of petitioner's credibility if this Court were to remand this case back. Well, what exactly did the I.J. say in respect to credibility? Not very much, Your Honor. And if you go to page, it's on the record on 65, it's 16 of his opinion. After going through and identifying potential problems with the petitioner's documentary evidence, he again goes on to say in a sentence, just because the Respondent can recite a story does not mean that story is true. The Court believes that under the facts and circumstances that this Respondent has failed to present the testimony of his brother, who was the alleged primary victim of police activities, and that the Respondent has only been issue of interest since 1995 and again in 1998 and again in 2001 in an area where he's living and studying without any problems, without authorities. In the interim, does not ring true. Then he goes on to state, the Respondent, therefore, is found to not have established past persecution on account of a political opinion. I think ring true is the equivalent of this individual is not credible. Well, Your Honor, under this Court's precedent, precedent. Yes or no? Under this Court's precedent, it doesn't appear sufficient. And that's what the government states in its opening brief, that this mere reference to the petitioner's credibility. Even if the decision replaced ring true with the magic words, therefore, I enter an adverse credibility determination, the failure to really marshal very much in support of that would seem to have difficulty surviving in the face of this Court's precedent. So it's not merely a matter of not using the right conclusory language. I mean, what is offered up by the IJ to support? Suppose we'd read that as an adverse credibility determination. Do you think that there's enough there to support it under the precedent of this Court? Well, Your Honor, the government didn't brief the actual mayor. No, I understand that. But it goes to the question of what do we send it back for. I mean, in essence, I understand why you're trying to send it back to have that issue revisited. But it appears that the IJ said what he wanted to say on that issue, and I'm not sure that our precedent permits us to give him another whack at the same question. Well, Your Honor, in two decisions, in Hartooni and Manomboa, this Court wrestled with this identical issue. And I would say this case is no different from those cases. And in both those cases, it appeared that the immigration judge noted potential inconsistencies between the Petitioner's testimony, documentary evidence, and then didn't use the magic phrase that I find this Petitioner to be incredible. Well, the Court in that case, in both cases, remanded back to the Board to determine whether or not it should remand back to the immigration judge for a full and fair inquiry regarding the Petitioner's credibility. That's what happened in those two cases. In that case, those cases are no different than the instant case. So the potential problems that may exist in this case regarding adverse credibility determination also existed in those cases, and yet the Court still remanded in those cases. Okay. Which cases are you relying on now? Two cases. If you – I have the citations right here, too, Your Honor. Okay. It's a – Where do you recite those cases in your brief? Well, Your Honor, I am not the briefing attorney in this case. Oh. Had I been, I would have noticed the potential issues in this case and would have moved for a remand much sooner, but I was only assigned the case more than a week ago, and – I'm sympathetic. We all play the cards we're dealt. We understand your situation. Right. Exactly. But you have an obligation to give those citations to opposing counsel and to the Court in advance of argument. Did you do that? No, Your Honor. I had filed a motion to remand last week identifying the potential problems, and yet I can go ahead and file a supplemental brief in order to cure any potential misgivings that you might have with the government proceeding at this point. Don't write a brief, but just so the record is clear, go ahead and send us a 28-J letter. Thank you, Your Honor. But I think I know what cases you're referring to, because we've been living with this issue for a long time in a lot of cases, and there are some things in some of our cases that suggest that, but there are many more suggestions that talk about a second bite at the apple. Whatever my feelings about the dissonance within Ninth Circuit case law, the question becomes, if it's going to be remanded, and it's pretty apparent it's going to be remanded, exactly what issues are open and at what point is the agency supposed to start again? You're arguing, I take it, that the agency goes back to square one and has the opportunity to revisit the petitioner's credibility, past persecution and so forth down the road. Petitioner himself has basically said, look, the agency had a shot at those issues, has made its finding with regard to credibility, sort of, has made its finding with regard to past persecution, and, indeed, it may have made its finding with regard to well-founded fear. And so that's the point that the inquiry should pick up. Why is it we should go farther back in time? Well, the reason why we should go further back in time is because under this precedent, while you are correct that it seems to be all over the place, if you go ahead and look at the cases in the body of law. A little tension, perhaps. All over the place. Okay. Okay. Sorry. A little. It's intention. Fine. Okay. But in the cases that I cite here, the reason why the Court remanded back to allow the agency a second bite of the apple was because, unlike the other cases where it refused to do that, it specifically made the determination here that the immigration judge expressed misgivings. He actually identified potential reasons. But he just fell short of finding the petitioner credible. But that's really what leads me back to the question I asked earlier. Insert the magic words and then look at what the I.J. cites to support an adverse credibility determination, and it seems to me what he cites falls pretty woefully short as comparison with what our Court requires to sustain such a determination. So speak to the substance of what he cites. I mean, what does he cite to support the determination? Is there enough there to sustain it? At this point, Your Honor, I am not willing to defend the adverse credibility determination that hasn't been made in this case. The immigration judge noted some potential issues. This is why I'm not sure it fits the pattern you're trying to suggest, which is those cases that maybe the judge didn't use the magic words, but they gave every indication. His intent is to find this petitioner not credible, and hence we don't accept his testimony. He can't prove his case. So we send it back to make sure we know what he's talking about there. In this case, we know what he's talking about. He doesn't use the magic words. But not only does he not use the magic words. He didn't give us sufficient grounds to say that that determination can be sustained by substantial evidence. And I understand your situation. You pick up the hand. You've been dealt. And the argument hasn't been made. But you've read the file, and you probably have a good idea. I'm not asking for a concession, but you've got a pretty good sense that, gee, the I.J. really didn't marshal what he needs here. So that's why I'm sitting here saying, okay, where does this case go? I can't help the feeling we're past that station. I mean, the I.J. said what he wanted to say on adverse credibility determination. That really doesn't pass muster. So if that's the case, don't we have to go to the next stage? Assuming that you believe credibility is no longer an issue in this case and that the agency missed the boat on that, then the next issue that has to go to is whether or not the Petitioner's actually established past persecution. Because if you look at the immigration judge's opinion. Well, let's take that. I mean, because that is squarely put forward in the brief. But if you accept the Petitioner's testimony as credible, as at this stage the brief itself concedes we must, is there really a serious argument that what he testified to doesn't? I mean, you may not believe it. I may not believe it. But what he testified to certainly seems to pass the test for past persecution, doesn't it? I would add to that that many of the documents which were not admitted probably should have been admitted. Perhaps, Your Honor. But going back to your question regarding, you know, the past persecution, the immigration judge in this case didn't address the actual whether or not the harm experience Petitioner rose to the level of persecution. He didn't address that. Nor did he address that. Plainly because he didn't believe Petitioner. Correct. But now we're in a context where we presume what he says is true. He's deemed credible. If you take what he says is true, is there a serious argument to be made that that doesn't qualify as past persecution? Well, regardless of whether or not you take it true, this Court isn't permitted to make that determination in the first instance under Ventura if an agency made it. But we're not, because the agency's made it. The agency said no. I would raise the point that we would respectfully submit that the agency did make that determination in this case because they did not. They found they did in established past persecution solely based on the fact that his testimony or his claim wasn't credible. Outside of that, the immigration judge did not make any determination regarding whether or not the harm experienced by Petitioner rose to the level of persecution and did not determine whether or not that harm was on account of our protected ground. If this Court were to presume credibility, the proper course of action is then to remand the case back to the agency to make that determination in the first instance. While the immigration judge did address what found to be fear in this particular case, that determination does not hold because you can't get to well-founded fear without first determining past persecution. And if you determine past persecution and you determine that Petitioner did suffer past persecution, that gives a rise to a rebuttable presumption that the government must rebut. However, if the Petitioner did not establish past persecution, then it's still his burden to establish that he has a well-founded fear. Kagan. Well, now, outline for us what he said happened to him. Excuse me, Your Honor? Outline for us what Petitioner said happened to him that constituted persecution. Well, Your Honor, he claims that he was arrested on multiple occasions and during these detentions, where for a matter of days, my – I see my time has expired. Would you like me to finish this up? Yeah, go on. Okay. The – he was tortured. Let's go off the hot seat. I like it up here. We want to give you the pleasure of San Francisco while you're here. Beautiful weather. But, yeah, he was detained multiple times. And during those detentions, they beat him, like Petitioner's counsel say, he was hung upside down. There were some pretty egregious actions. So, yes, so it's possible under this Court's precedent that there might rise to persecution. However, in this case, the immigration judge did not make that determination. So if this Court is to remand – How did he reject the petition? He found that the – he found that – We're not grading your paper. We're grading the immigration judge's paper. Right. And then the BIA signs off on it. I have to say, I've read, oh, God, maybe thousands of immigration judge decisions by now. And I had a hard – I got to the end, what's the point of this? We don't have an express statement with regard to credibility, although it's clear that it's through gritted teeth that the immigration judge is listening to and reciting what he said because he doesn't believe it. And so the only way I can make sense out of it is say implicitly he must not have – he must have found there was not past persecution, because otherwise, does he speak to the issue at all? It's plainly the case being made by the petitioner. He's talking about being tortured and beaten by a leather strap, and the I.J. says zippo about that? It appears – aside from the fact that it was a credibility determination, an implicit one, it appears that the immigration judge is making, and that's what he rested – And what that leads to, you don't lose because of adverse credibility in theoretical terms. Practically, you do. But what you lose – the reason you lose is that because we don't accept what you say is true, you can't prove past persecution, and you can't prove well-founded fear. Now, past persecution is clearly at issue in the case because of what he testified to about the beatings and so forth. And for the I.J. to say nothing about it, I have difficulty understanding how the position can be taken. The agency never reached the issue. It had to reach the issue. There's no other way to address the case that's being put in front of it. Well, the agency wouldn't have to reach the issue. Well, how could it – then what does it say about it? Because if the agency – the immigration judge appears to have limited his determination to the adverse credibility. But that doesn't – that guy can be lying like crazy, but if he has other evidence – because the question before the agency isn't, is this person credible? The real question before the agency is, does this person qualify for asylum as a result of either having suffered past persecution and getting the benefit of the presumption or without past persecution having a well-founded fear? Now, in almost every case, including this one, if the Petitioner isn't credible, the Petitioner can't possibly carry his burden. But theoretically, it's possible. And the credibility is a way station, is maybe a checkpoint you have to go through. It's not the ultimate determination. An I.J. couldn't say, you're not credible, case dismissed. There's a missing step. Well, in this case, I think they had to get to the step, and the step has to be past persecution, even if he doesn't say it. And it has to be no well-founded fear, which he does actually say. And so we come back to really the same question, and I don't want to beat this too much, but I'm having difficulty understanding why it is the agency should be allowed to revisit the questions it's already chosen to address. Well, because, as this Court has done before, it has identified that the credibility determination in this case falls short of being explicit. However, there are misgivings. And you talk about the fact that the Petitioner can still establish his eligibility for asylum, even if his testimony is found not to be believable through possibly documentary evidence. However, in this case, the immigration judge discounted the documentary evidence. So I would say that the credibility issue is dispositive of this case. The immigration judge did not reach the merits of whether or not he was actually – whether or not the harm he experienced rose to the level of persecution, nor did he need to, because the evidence in this case, he was found to be incredible. At that point, he just denies the case. There is no reason to go any further. And so it seems to be a burden of proof analysis in this case. The immigration judge seemed to find that he didn't meet the burden of proof for asylum. So that's the reason why the immigration judge didn't have to reach whether or not he established past persecution on account of the harm he experienced. Thank you, Counsel. Thank you very much. In its effort, in his effort to make sense of the immigration judge's decision, counsel twice suggested that the immigration judge had found Mr. Singh not credible. Obviously, that's entirely inconsistent with its own concession to the Court that there is no explicit adverse credibility finding in this case. The judge's analysis on past persecution, it's on page 66, where she makes a specific finding where he did not establish past persecution. It's up at the top of that page. In view of the government's concession, the only way to make sense of that is that notwithstanding credible testimony, the immigration judge found that Mr. Singh had failed to meet his burden of proof. That issue is before the Court. The government told you it's before the Court when they filed their brief in opposition to this appeal. If that issue is before the Court, Mr. Singh's testimony is true, and he was arrested three times. He was beaten into unconsciousness. And as I said earlier, in that third arrest, he was suspended from the ceiling, upside down with his ankles tied while he was beaten with a rod, and castigated for having the temerity to plan to draft an article criticizing the police of human rights abuses. That conclusion simply makes no sense. It's unsustainable. The Court should reverse that, send this case back to the Board of Immigration Appeals simply to exercise its discretion on the asylum claim, or for the Board to engage in some analysis after as to whether or not the government has rebutted the presumptions of future persecution that arise upon a finding of past harm. If there are no further questions. There appear to be none. Thank you. We thank both of you for your argument. The case just argued is submitted.
judges: Anello, Fletcher B. , Clifton